Case 19-3006, KCI USA Inc v. Healthcare Essentials Inc, et al. Argument not to exceed 15 minutes per side. Mr. Stiefel, you may proceed for the appellant when ready. May it please the Court, my name is Orval Stiefel. I represent the appellant, Colin Tenenbaugh, who is the good twin, and I would like to reserve approximately five minutes of my time for rebuttal. Fine. This is a case in which the lower court entered a judgment for $647 million against my client, who at that time was 36 years of age, with two children and a wife. It is an economic death sentence, and this was done without a jury trial. The decision that the Court rendered indicates that the Court got to that result by imposing a discovery to sanction a default judgment against my client, and then based on that default judgment, assessing damages, attorneys' fees, and other sanctions. Is the trial required to impose sanctions? It was indeed for this reason, Your Honor. It was required because the issues that the judge had to decide in order to get to the sanction, in order to impose the sanction, were the same issues that were the heart, the gravamen of the liability case that was pled in the complaint on which a jury trial had been demanded. And the Supreme Court's decision in Derry, Queen v. Wood says that when you have a case that involves both jury and non-jury issues, the Court must submit those issues, those common issues, to the jury for decision by the jury, and then the Court is bound by the Court's finding on those issues in determining the non-jury issues. Are you saying, in effect, that you can't have a default judgment in a case that's asking for damages that are triable to a jury? No, ma'am. No, Your Honor. Not at all. Why isn't this... I'm talking when I should be listening, and I apologize. Why isn't this a normal default judgment? It's not a normal default judgment because if you look at all the other cases, okay, where default was imposed as a sanction, there were no issues that the defendant engaged in sanctionable conduct. That was a given. In this case, it wasn't. There were two defendants in this case. They were twins. Did your client, Colin, destroy KCI vacs? Vac? I'm sorry? Vacs, whatever these vacs are, vacuum devices. He did not, Your Honor. He did not. At least he did not do it knowingly, okay? He did not engage in any of this. I thought that there was evidence, and I don't mean to be yelling, but I think I'll make it so you can hear. Thank you, Your Honor. I thought there was evidence that Colin threw vacs into a dumpster. There was evidence to that effect, but that evidence came in by way of a complaint, an affidavit that was filed in support of a criminal charge against both Colin and Ryan that was ultimately dismissed as to Colin. And the evidence in this case is overwhelming that Colin had nothing to do with health care essentials. There was a brief period of time between approximately 2010. Before we get off on that tangent, the specific question is, what did your client do, if anything, on April 12, 2017? Now, the allegation is that he threw records, documents, and other items that he took out of self-storage, and he threw them in a dumpster. Okay. Now, somebody must have been there to see him do that, or we wouldn't know about that, right? That's correct. So who saw him? I'm sorry. Did somebody? No, no one saw them do that. The only two people who were at that episode were Colin and his brother Ryan. So whatever was thrown into the dumpster then, in fact, went to the landfill and was gone? That's correct. So are you saying that he denies that he threw anything into the dumpster? No, no. I'm sorry, Your Honor. I'm not saying he doesn't deny that he took part in that behavior. He didn't know what was in the boxes, and you need to know how this came about. On that morning, the prior evening, Colin had been in Pennsylvania pitching a client for Abbott. He worked for Abbott Laboratories at that time, 70 hours a week or more. He was pitching a client. He left Pennsylvania early in the morning, and on his way back, he gets a call from his wife saying, The baby's sick. He's running 103-point-something fever. I've got to take the baby to the doctor. That's followed up by a subsequent call that he gets that the FBI had been to his house asking questions about his involvement with health care essentials and that his mother's house and his brother's house are being searched. He's in meltdown, panic mode. As this is happening, he, by chance, he gets into Brecksville, and he, by chance, sees his brother on the road going in the other direction. The brother signals to him, pull over. He pulls over. There's no telephone contact between them because the brother's cell phone had been taken by the FBI at the house during the course of the search. The brother jumps in the car, has a pair of bolt cutters with him, and says, Take me to the storage locker. What storage locker? Just never mind. Just drive. What's this about? Just never mind. Just drive. Is this in the record? It's not in the record, but you're Then stop. Okay. Because this question about what your client did on April 12th has existed throughout this case. And looking at the briefs, you didn't respond to that particular allegation of a misdeed. Now you're responding because we asked you the question, but you're responding by something that's not in the record. Your Honor, the only thing that was in the record was an affidavit from the FBI in support of a complaint that was ultimately dismissed from him, from which he was ultimately dismissed. And when you look at the other evidence in this case, the totality of the evidence in this case shows that he had nothing to do with health care essentials, had no knowledge of the storage locker in advance. Would you admit that if the facts showed that he knew what was in that storage locker and he willingly helped his brother dispose of evidence, that'd be a pretty big problem for you? That would be a big problem. Why haven't you ever addressed it? Because he had been under complaint for that, and it wasn't like the FBI and the government was done with him. They were still looking at him, and he was under scrutiny for another year. And any lawyer, Justice Jackson of the Supreme Court back in the 1950s says, any lawyer worth his salt will tell you, don't talk about it. And that's what we did. When it came to the hearing, we filed a motion in limine saying, we don't want to talk about anything that happened at the time of the arrest. And the judge gave some consideration to that motion, thought it was premature, asked Mr. Crist if he was going to call Collin on cross-examination. The answer was basically no. So Collin was never called. There was never any cross-examination on the thing. And because the only evidence in the record was inconclusive, and it was not evidentiary quality documents reading meeting rule 56, summary judgment standards, you squat at that point. The burden of proof is on them to prove that he has involvement in this. And when all they have is an affidavit filed on behalf of a criminal complaint that's been dismissed because the FBI itself has concluded that there's not enough evidence of his knowledge to pursue him on that, that's one lawyer's stop. I'm completely missing your point. That's a question of whether they thought that they could prove beyond a reasonable doubt that he committed a crime. This is coming up in a sanctions thing. And I understand you don't want to admit what he did when the criminal proceeding is, if there is a criminal proceeding or investigation still pending. But didn't this guy eventually plead guilty to something and go to jail? He pled guilty to a 101 offense, lying to the FBI a year later, and is in jail right now. Now, Your Honor, when you look at all the evidence in this case, he had nothing to do with health care essentials, even during the period when he served as a titular head of the company for tax purposes on some wackadoo theory that he could write off HCI's losses on his personal tax returns and get repaid for the loan, money and loans. He didn't have anything to do with HCI at that point. Wasn't he the sole shareholder of HCI? The accountant, the CPA who prepared his returns, put him down on the tax returns for those three years as the sole owner of HCI. So does this case involve actions by health care essentials during the period that he was shown to be the sole owner on the tax returns, or does their complaint about what HCI did encompass a period after that? The underlying lawsuit filed by KCI wasn't filed until 2014. To the extent there were any discovery violations, they happened after 2014. He had been out of HCI for at least a year, if not longer by that time. My question is, did the complaint address conduct by health care essentials during the time period that your client was the sole shareholder? No, it did not, Your Honor. That happened years later. Okay. So now afterwards, after he's out, then one thing that he did get involved with, in August of 2016, he's involved with a supplemental spreadsheet, right? Correct. He just does that out of the goodness of his heart for his twin brother? No, because the twin brother prepared the spreadsheet. He didn't have anything to do with that. He didn't have access to the records. I just asked you if it was true that your client was involved in preparing a spreadsheet in August of 2016, and you said yes. I'm sorry, Your Honor, my hearing isn't 20-20. I wear hearing aids in both ears, and I misunderstood the question. His only involvement was, after Ryan prepared that spreadsheet and presented it in court and was jailed for contempt, the judge, Judge Pearson Task Collin, gave him the task of taking that spreadsheet and going out to the health care facilities and finding the units that weren't questioned and getting serial numbers off of them. He had nothing to do with the preparation of that. And what the record shows... How did she task him with that when he's not even added to the complaint as a defendant until about a year later? I didn't know. That's the only involvement I know of with him with a spreadsheet, Your Honor. Okay. It was after he was in, and he came in in the first amended pleading, and I'm not clear on the date on that, but that was like after the case had been prepared, had been pending for about a year. I see that my time is up. You can save your five minutes for rebuttal. Thank you. May it please the Court, Tom Christ for KCI USA. The Court's findings, both factual and application of the law, the Court below, are reviewed for abuse of discretion. The Court found that there was indisputable evidence in the record to sanction Collin Tenenbaugh. Could I interrupt you there for just a second because I'll just telegraph to you what I'm concerned about. The judge seemed to lump Ryan and Collin in together here, and seemingly, unless I just missed it, treated them the same for purposes of why she granted default judgment and then why she awarded $600 million. If she had separately articulated what Collin did or failed to do and how that relates to what should be an appropriate amount of a default against him, then I don't think we'd probably be having this discussion. But where do you point to where she specifies what he did separately? Sure, and I think the judge did three things. She referred globally to defendants, she referred to the Tenenbaughs, and she referred to Collin. So the Court specifically found that Collin formed the company, Healthcare Essentials, Inc., which was the sole defendant for a year, that he is on the only tax return the defendants produced in the entire case. In 2014. Is it correct that whatever his role was during that period, that all predates what you are complaining about? Absolutely not. We introduced evidence with Collin Tenenbaugh's name on it to the Court dated 2018 through 2017 in this case. Not Ryan, Collin, repeatedly. Collin was the sole shareholder, admittedly. That doesn't still answer the question of whether what you are suing over and seeking damages included conduct that went back before 2012, when at least ostensibly he's no longer shown on the tax returns as a sole shareholder. This argument that Collin Tenenbaugh at any point ever separated himself from this company is created out of whole cloth and is specifically rebutted in the Court's order. Collin Tenenbaugh was the original owner of any business named Healthcare Essentials. This is the third time now I've asked whether you're saying their conduct for which you're seeking damages went back before 2012. Pretty simple question. Yes. It does. Absolutely. That's in the complaint. That is in the complaint. Perfect. That's all I wanted to know. What did Collin do as a discovery abuse? Because the sanction of the default judgment is for discovery abuses, right? Yes. Several things per the Court's order. One is he physically possessed evidence and property of KCIs, repeatedly responded to discovery requests on behalf of the company and on his own behalf once he was a party in his individual capacity, and on each time indicated he had produced all related documentation, all related evidence, all related property. It was specifically ordered by the Court on a separate occasion, both the Tenenbaugh brothers, to relinquish any evidence, any materials, any information they had, attested again in court and in writing in an affidavit that he had done so. Could I just interrupt you before we get beyond that? Is this addressing the question of whether there were KCI-related records and property at a house? In part. Now, is it true that Collin and Ryan lived in that same house? Yes. So you're sort of drawing the inference, which may or may not be true, that these were Collin's records. He knew they were there. He was in control of them, and he then willfully failed to comply with the order. Is there any evidence in the record that addresses that one way or the other? Yes. In the documentation submitted to the court from the criminal case, there's indications that Collin Tenenbaugh took law enforcement to his home to show them where he had stored KCI property and documents related to the case. In addition to that, he is currently incarcerated for having discarded, admittedly discarded KCI property and evidence in this case that he had been ordered to produce and had attested repeatedly that he had produced. What property did he discard that's in the record in front of us? Documentation and devices. And was that the dumpster issue? Yes. The other question that was asked of who saw Ryan or Collin, a number of gentlemen in blue windbreakers who arrested them in the process of cutting a lock or under observation cutting a lock in a storage facility full of KCI property, the location and the fact there was a storage space was denied in discovery, and both had attested repeatedly at the requirement of the district court that they had no knowledge of any other KCI property anywhere post injunction. So if these guys in the windbreakers, who I assume are FBI, saw them removing the things from the storage facility and throwing them in the dumpster, then am I correct that that was recovered from the dumpster? There were two trips. Whatever the defendants had with them when the FBI picked them up, they seized. We still don't know what that is. Others were taken elsewhere by Collin Tenenbaum and discarded. That's what he lied to the FBI about per what we submitted to the court, and that's why he's incarcerated. Now, I'm not asking this question because I'm encouraging this activity. Obviously I'm not. But I am trying to get a sense as to what obstacle did these actions, as reproachable as they were, what impact did they have on your ability to, had this case gone to trial, prove your case? I'm glad you asked. Every one of these wound vacs, they're the size of a small radio, and they are portable. And every one has a serial number either on it, where you push a button and it pops up, or in it, when you pop it open and look at the serial number, or both. We had spent, we at KCI, quite literally spent years trying to get from the defendants the serial numbers of the devices, even the devices that they admitted they possessed. So when they discarded boxes, specifically Collin as well, discarded boxes of documentation and devices, with them went the serial numbers. With any serial number, KCI can tell you when it built the vac for itself, it self-manufactures, and every place that vac was, every person it treated, every time it was cleaned, while in its possession. It'd be like a VIN number on a car. This would be the equivalent of Collin Tenenbaum, and it's one of the arguments we made to the court, using a screwdriver and chipping off the VIN numbers of cars while we were looking for them. In the prior case in particular that you just argued, there is this disk of the mirroring of the hard drive that eventually became available in this case. Now, that's sort of treated as the smoking gun, that aha, this is why all of these people were lying all along. Was there enough evidence on that disk to fill in all of these gaps created by destroying records and destroying devices? Unfortunately, no. As we mentioned in the brief, there were additional discovery orders where the court required Collin Tenenbaum, Ryan Tenenbaum, and the businesses to pick up their computers, handheld devices, telephones, mobile phones, and deliver them to the court. Collin Tenenbaum, in particular, per the court's findings, did relinquish a device and refused to ever give us the password so we can pull the data off of it. On all of the other devices, our consultant confirmed and testified that the defendants, while under order to relinquish the devices, this specifically includes Collin and Ryan Tenenbaum, used additional bleach bit programs and wiped the data from the devices. So we had a few hundred pages of discovery from the defendants, including Collin Tenenbaum. We had ultimately a disk with 10 years of information on it, and we had bits and parts of laptops, telephones, and office computers, all of which ultimately, once we possessed them, had incriminating evidence on them and evidence that made it clear to the court that it was withheld for a reason, to avoid judgment, but it was ultimately impossible to piece all of it together, except every single serial number given to us by the defendants, including Collin Tenenbaum, was confirmed to have been stolen from KCI, every last one of them. Well, you were able to convince Judge Pearson that they damaged you to the tune of some $200 million, which then ends up being troubled. Are you saying that you might have been able to prove that number should have been even higher had you had these records or devices that were destroyed? Yes. Or are you satisfied that the $200 million is the totality here? I don't expect to collect the $200 million, but don't for a moment think that it was the totality. We have multiple years during the litigation in which the defendants, including Collin Tenenbaum, grew the business admittedly. So while we were seeking a preliminary injunction, they delayed the hearing for 27 months on a motion for a preliminary injunction by continually convincing the court that there was insufficient information for them to go forward. The court continued to order them to produce, including Collin, and he wouldn't. Collin went as far as to produce knowingly fake information to the court that the court ultimately determined he knew was fake at the time. What was that? It was a spreadsheet of locations of wound vacs. So the court incarcerated his brother briefly for contempt, made a determination that the information that we had been provided, KCI had been provided, that would let us go out and look at these wound vacs and pull the serial numbers off of them ourselves, was knowingly false. The court incarcerated Ryan Tenenbaum at the hearing and tasked Collin Tenenbaum with producing a number of things in order to purge his brother's contempt, all of which he confirmed he could do, all of which he did, and all of it was fake. And the court attributed that to him. You said there were two fakes. The first fake was by Ryan and then the second fake was by Collin? That's right. And the second one elicited the court releasing Ryan Tenenbaum from incarceration. But I think the interesting part about that, at least to me, is that you have a pretty persuasive-sounding answer as to what Collin did and how that prejudiced you and how it relates to the damages. But I don't find any of that in the order because, at least as I read it, the judge simply lumps Ryan and Collin in together. So is that something that we should be worried about or not, in your estimation? I think not for two reasons. I mean, the court describes that Ryan and Collin Tenenbaum operated interchangeably with their businesses, so indicating that the defendants destroyed evidence, the defendants attested to certain things that turned out to be false, hits both of them. But the court also specifically found that Collin Tenenbaum's attestations to the court, where the court actually made every lawyer and every party sign an affidavit indicating they had made full productions, was knowingly false when made. And in addition to that, the arguments that we've heard here today, Collin Tenenbaum, in advance of the hearing on case terminating sanctions, so the one that was focused solely upon the defendants, preemptively filed a motion in limine, seeking to exclude the ability of KCI to cross-examine him about all of these factual underpinnings. So ultimately, at the hearing, counsel's correct. At the hearing, the court asked me if I intended to call him to make him burn a Fifth Amendment privilege. And I said, I'll put on my case. If I don't think I need him, I won't call him. In his own case, never took his feet and didn't argue, offered no testimony. The court required the parties or gave the parties the opportunity to file findings of fact and conclusions of law. And Collin Tenenbaum made no filing. The court specifically found that Collin Tenenbaum put up no defense with respect to the amount of the judgment, the amount of the sanction for attorney's fees, never raised any of those issues below, despite being represented at each of the hearings, including hearings at which the parties called witnesses, including experts, and cross-examined them. So here, the court found there was overwhelming evidence of individual misconduct from Collin Tenenbaum that justified default. Once the court entered the default, the allegations in the complaint by rule are taken as true. Collin challenged that, stating that the court still had to determine whether the allegations were sufficient against Collin Tenenbaum. And that's correct. And the court did that exercise and specifically cites allegations of veil piercing and allegations of direct individual responsibility and culpability for Collin Tenenbaum on charges that include, or on claims that include RICO claims, among others. Does that have to be done claim by claim so that for every claim in your complaint, there has to be a finding by the district judge? Collin Tenenbaum only raised the issue in the context of veil piercing. So the court addressed it in the context of veil piercing. Also found that there were rich factual allegations on the other causes of action that KCI had asserted against Collin Tenenbaum. Pierced the veil as a result of determining that the factual contentions were appropriate after default, but also indicated that the factual contentions were overwhelming and satisfied the court in any event that the parties had acted entirely interchangeably, disregarded the corporate form, and had operated the business for illegal purposes, all of which support veil piercing as well. And then the court addressed the issue of the right to a trial and said, once I enter default and determine that the allegations are appropriate and pierce the veil at that point, you no longer have a right to have a trial. If you didn't think that the district judge was correct on veil piercing, would your case fall apart? No. I think because the court addressed it both ways. One way is there was sufficient unrebutted evidence. Zero evidence came into the hearing that was adverse to our position and the evidence that we submitted regarding the parties acting interchangeably. The court also found that apart from that, as long as we had properly pleaded individual liability and veil piercing, once you properly entered the default, that those issues were resolved. And there's law directly in this circuit. One thing that bothers me about that, so if I'm wrong, please correct me, is that in the context of a default judgment, it isn't enough to say that they didn't respond. Still before entering the judgment itself, the judge still has an independent obligation to make sure that the party can prove up on what they're claiming. I think that's the law, isn't it? That is the law. Now, if she doesn't explain how she differentiates between Ryan and Colin or say that they are exactly similarly situated, and she doesn't explain why it's $600 million for each of them, then does that comport, in your view, with this obligation? I believe it does because there is, in KCI's opinion, enough instances in which the court specifically sanctioned Colin Tenenbaugh by name for very specific misconduct, multiple misrepresentations to the court that the court quotes in details, and the fact that he ultimately possessed evidence that wasn't turned over in the case a year after the court entered a preliminary injunction that also ordered the relinquishment of everything. And at that time, the defendants did turn over more things they had been secreting and attested it was everything. So our position is the court did separate them enough where they could be separated, and in places where their conduct was truly hand-in-hand, did not. When we were dealing with identical twin brothers and introduced evidence that they traveled on each other's passports, they shared a single health care account, there's no telling these two apart, and there's evidence that they both signed pieces of paper repeatedly for the court that violated the rules. I think that's more than enough, especially on an abusive discretion standard, in which case great deference is given to the court who heard all of these issues  Thank you. Virtually each one of those points is incorrect. I'm going to try to address them as quickly as I can. When you, Your Honor, asked him what evidence was it that linked Collin to the Corporation of Health Care Essentials, he said the only tax return they produced showed that he was still the 100% shareholder in 2014. When the accountant who prepared that tax return was deposed, he said he didn't know where that information came from. This was an accountant who Collin had never seen. He had never seen the tax return until it was shown to him in deposition. There's no evidence that it was ever signed or was ever filed, and the accountant testified that he simply parlayed off of prior tax returns that had been filed on behalf of Health Care Essentials and got that information from Rose Agar, who was Ryan Tenenbaugh's executive assistant. With respect to did Collin ever physically possess KCI property, the example that Mr. Criss gave was, yes, he had the box of documents at his house. And, Your Honor, by that time, by the time we're talking about, Collin did not live with his brother. He had gotten married and had a couple of kids and was living separately. There is no evidence that he ever looked at that box and knew what was in it, and this was his twin brother. His twin brother had access to his house, went in and put a box in there. This came out in Collin's FBI interview. Did Ryan ever put anything in there? Yes, and he took them there and the thing was gone. Obviously, Ryan had taken it out. There is no evidence that Collin was ever in that box, knew of its contents, knew that it had anything to do with this case. He recites, they both lied in affidavits that they had produced all records. The judge ordered them to provide written, sworn confirmation that they had provided all records. Collin didn't know whether they had provided all records or not. He was relying upon Ryan and the attorneys who were representing Ryan at that time who were not the Kavich lawyers. And he was simply summoned to a meeting at that lawyer's house, was told, you've got to sign these documents in order to comply with the discovery order, signed it and was out in five minutes. He had no way of knowing whether those were all the records or not. Do you somehow think this is okay? No, I don't think it's okay. But I'm telling you, this shows that his culpability is far less than Ryan's. And this guy never knew, he never knew what records KCI produced, what records KCI possessed. And when you look at Rose Eggers' testimony, half the stuff that they were looking for never existed from the beginning because Ryan didn't keep any records. She was unable to do the books for the corporation because he wouldn't give her anything. The Jernov data, I'm sorry, let's talk about the phones. The one thing that they say that Collin did is when Collin was ordered to surrender his own cell phone, he failed to do it. He did surrender it. He turned it over to a guy who was supposed to get it to the courthouse. By 5 o'clock on Friday, the guy didn't get it there. Instead of bringing Collin's phone back to Collin, he lumped it together with all the electronic devices that Ryan was producing and gave it to Ryan. And the electronic devices were delivered to the court the following Monday, in other words, over the weekend. Did Collin refuse to give the passcode? He did not. He did not. That was never requested of him until three months later. Three months later, did he refuse? He went to their experts' offices and worked with them to try to get the password and get the thing activated, and it simply didn't work. Now, based on my personal experience, the FBI has no problem getting the cell phones, whether you give them the password or not, and I would expect an expert to be able to do that too. So he gave them the password, but he forgot what it was? He did forget what it was. These young guys, I'm 63 years old, I barely can operate an Android phone, but these young guys change passwords every two weeks or so. They're required to do it, especially Collin, since he was in the health care field himself, had protected health information on his phone, and needed by Abbott's rules and regulations to change the passwords. The eraser program. There was a program put on the office computer, on Ryan's office computer, that was intended to delete data. If you listen to Rose Agar's testimony, though, she said Collin had nothing to do with that. Ryan is the one that called in the expert and had the thing erased. Collin had nothing to do with it. There is simply no evidence. I see that my time is up. Can I say two sentences and sum up? Two sentences. Okay. There is simply no evidence in the record that Collin had any knowledge of any of this skullduggery, suppression, spoliation that was going on, or that the discovery responses were deficient. And to the extent he unwittingly engaged in any of this suppression of evidence, his culpability is far, far less than Ryan's and did not warrant imposition of a $647 million judgment. Thank you. Thank you. Thank you both for your argument. The case will be submitted.